UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
WILFRIDO BONILLA,

                              Plaintiff,              Case No.

            -against-                                 **COMPLAINT
                                                      AND JURY DEMAND**

THE CITY OF NEW YORK, SERGEANT
JOHN DEBINADERO, SERGEANT
JASON ASSIA, LIEUTENANT PAUL
GAGLIA, and DEPUTY INSPECTOR,
VINCENT SALERNO,

                              Defendants.
-------------------------------------------------X

    Plaintiff Wilfrido Bonilla (hereinafter "Plaintiff,") as and for his complaint by his

undersigned counsel, alleges as follows:

## INTRODUCTION

1.    This is a suit to obtain relief for discrimination on the basis of Plaintiff's race and

national origin; racial and national origin discrimination by virtue of a hostile work

environment; sexual harassment by virtue of a hostile work environment; and retaliation

for making a complaint of racial and discrimination which continues through his

employment by the City of New York, (hereinafter "the City" through its agency, the

New York City Police Department (hereinafter " the NYPD"), all of which are in

violation of Title VII of the Civil Rights Act of 1964 (Title VII); the New York State

Human Rights Law (NYSHRL); the New York City Human Rights Law (NYCHRL); and

the equal protections clause of the 14th Amendment to the United States Constitution (the

equal protection clause).

1

## VENUE

2.  The basis of venue is Plaintiff's employment in New York County and New York County being the venue where the events alleged in the complaint occurred. Venue is proper in the United District Court for the Southern District of New York pursuant to 28 U.S.C. §§1391(b) and (c) and 42 U.S.C. 2000e-5(f)(3) in that the offices of defendants are within this district, a substantial part of the events giving rise to this claim arose in this district and records relevant to the practices complained of herein are located in this district.

## JURISDICTIONAL PREREQUISTE

3.  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and a right to sue letter was received by the plaintiff on September 28, 2018.

4.  This complaint is filed within 90 days of September 28, 2016.

## PARTIES

5.  Plaintiff Wilfrido Bonilla is currently employed as a Police Officer in the NYPD currently posted to Police Service Area (PSA) 7, Bronx Viper, located at 737 Melrose Avenue, Bronx, New York and has been assigned to this unit since February 2018.

6.  Plaintiff Bonilla is a Latin American Male originally from the Dominican Republic and brings this action for racial discrimination, national origin discrimination, hostile work environment, sexual harassment by virtue of a hostile work environment and retaliation arising out of his complaint of racial discrimination.

7.  At all times relevant Plaintiff, as an employee of the NYPD, a department of the City, is by virtue of that fact, an "employee" of the CITY within the meaning of the relevant

2

statutes.

8.   Upon information and belief, the CITY is a domestic government agency and is engaged
     in business in the state of New York, with a place of business in New York County.

9.   At all times relevant to this action, CITY was an "employer" for purposes of the common
     law of New York and the relevant statutes.

**FACTUAL ALLEGATIONS**

10.  From January 2016, until today, plaintiff Wilfrido Bonilla has been subjected to racial
     and national origin discrimination as a Latino and Dominican, and racial discrimination
     by virtue of a hostile work environment, and sexual harassment by virtue of a hostile
     work environment and has been subjected to continuous and continuing acts of retaliation
     because of his internal racial discrimination complaints.

11.  Throughout the duration of 2016 and 2017, while assigned to the 44th Precinct, located at
     2 East 169th Street, New York, New York, plaintiff's direct supervisors, Sergeant John
     Debinadero and Sergeant Jason Assia, and Lieutenant Paul Gaglia, all white males,
     discriminated against the plaintiff on the basis of his race and national origin, and created
     a hostile work environment for the plaintiff as a result of his race and national origin.

12.  Throughout the duration of 2016 and 2017, while assigned to the 44th Precinct, plaintiff
     was called "Willy Bobo" by his supervisor, Sergeant Debenadero, a white male, on
     multiple occasions numbering more than forty.  "Willy Bobo" is a racial slur used for
     Latin Americans.

13.  Plaintiff regularly requested that Sergeant Debenadero refrain from referring to him as
     "Willy Bobo" but Sergeant Debenadero continued to do so.

14.  From or about January 2016, plaintiff complained to all three of his supervisors, the 44th

3

Precinct Patrolman's Benevolent Association (PBA) Trustee, Police Officer Gary Martin, and plaintiff's PBA delegate, Police Officer Mitchel, about Sergeant Debenadero's use of this racially derogatory nickname, but this complaint was ignored, and Sergeant Debenadero continued to call plaintiff "Willy Bobo" every time they came into contact.

15. In July 2016, while on detail at Yankee Stadium, Lt. Gaglia assigned the plaintiff to guard a sanitation truck and ordered the plaintiff to remain guarding the sanitation truck three hours after plaintiff's shift ended. This assignment was un-necessary and only intended to humiliate and punish the plaintiff. No other police officer on Yankee stadium detail was ever assigned to guard a sanitation truck.

16. On October 20, 2016, accompanied by Sergeant Dominguez, plaintiff responded to a robbery in progress in the vicinity of 161st Street and Melrose Avenue. While arresting the suspect, plaintiff was struck in the face and head by the suspect and suffered a concussion.

17. As a result of the concussion suffered in the line of duty, plaintiff was not able to work for one and a half weeks. Plaintiff's application to designate this injury as having been incurred in the line of duty was discriminatorily denied. Plaintiff was forced to use his accumulated sick time for the one and half weeks that he was unable to work.

18. After he returned to work following this incident, plaintiff began to have problems with his balance due to a swelling in his brain caused by the trauma he sustained on October 20, 2016 while arresting a suspect.

19. As a result of this balance issue, plaintiff was forced to miss an additional three weeks of work.

20. Plaintiff's line of duty injury designation application with respect to the additional three

4

weeks was again denied except for five days. This denial was again, motivated by racial discriminatory animus.

21.   Multiple white police officers in the 44th Precinct who are comparable to the plaintiff were granted line of duty injury designation applications after they suffered injuries in similar circumstances on the job. The white police officers were treated like heroes, and plaintiff was treated like a pariah, for similar conduct.

22.   In 2016, including July through November 2016, while assigned to the Yankee stadium detail, plaintiff was regularly ordered to clean the bathrooms in Yankee stadium. This was not a job that was assigned to police officers nor was it their responsibility, but it was designed to punish and humiliate the plaintiff.

23.   White police officers such as Police Officer Anglero who was also assigned to the Yankee Stadium detail, were never ordered to clean the bathrooms in Yankee Stadium.

24.   After plaintiff returned from his three-week injury time off in November 2016, plaintiff's supervisors continued to assign the plaintiff to clean the bathrooms in Yankee stadium.

25.   In December 2016, plaintiff was placed on restricted duty as a result of the residual medical complications of the October 20, 2016 incident where he suffered blows to the face and head. Plaintiff had problems balancing.

26.   Although he was on restricted duty at this time, plaintiff was regularly ordered by his supervisors, including Integrity Control Officer (ICO) Lt. Gilbert Morales to participate in arrests. Officers on restricted duty, were usually not required to participate in arrests.

27.   Plaintiff explained to ICO Morales that he was on restricted duty, but ICO Morales stated that he didn't care, and compelled plaintiff to participate in arrests.

28.   On or about December 2016, plaintiff was transferred from the 44th Precinct, to the

Firearm Suppression Unit in Manhattan. In this assignment, plaintiff's role included monitoring intercepted telephone communications (wiretaps).

29.    In February 2017, plaintiff took the Civil Service Examination for promotion to the rank of Sergeant, and passed. On or about March 2017, plaintiff was transferred back to the 44th Precinct.

30.    Plaintiff was not promoted to the rank of Sergeant, and from March 2017 until date, plaintiff has been passed over for promotion to the rank of Sergeant, multiple times.

31.    Upon his return to the 44th Precinct, Sgt. Debinadero and Sgt. Assia, intensified their punishment and humiliation of the plaintiff.

32.    Plaintiff was regularly assigned to foot posts without a partner. Assignments to foot posts without a partner is a well recognized and acknowledged punitive posting in the 44th Precinct and the NYPD in general.

33.    Plaintiff was often placed on hospitalized prisoner detail.

34.    By placing him on foot posts without a partner, and assigning him only to hospitalized prisoner detail, plaintiff's supervisors, Debinadero and Assia, ensured that plaintiff would not get any arrest or summons activity during his tour.

35.    Police officers are required to report such activity on a monthly basis and the lack of arrest and summons activity by a police officer is seen as poor or below average job performance in the NYPD.

36.    In February 2017, plaintiff's mother in law passed away, and plaintiff requested a few days off to mourn his mother in law and to attend to his children while his wife mourned the loss of her mother. This request was denied.

37.    White police officers in the 44th Precinct who suffer the loss of a close family member

are routinely granted days off for this purpose and it was racially discriminatory to deny the plaintiff time off for his bereavement.

38. In July 5, 2017, plaintiff complained to his Union delegate, Officer Mitchell and ICO Gilbert Morales about the hostile environment in which he was forced to work.

39. In July 5, 2017, plaintiff filed a written internal complaint with the NYPD about the hostile environment in which he was forced to work primarily by the conduct of Sgt. Debinadero and Sgt. Assia.

40. Following this complaint, ICO Morales laughed at the plaintiff to his face and treated plaintiff's complaint with complete disdain.

41. No action was taken to investigate plaintiff's complaint of racial discrimination by virtue of a hostile work environment.

42. Following this complaint, ICO Morales ordered the plaintiff to place his gun in his locker. This is a procedure followed for anyone in the department believed to be suicidal but in this instance, it was retaliatory because ICO Morales did not have any reasonable basis to believe that plaintiff was suicidal.

43. ICO Morales was attempting to further punish the plaintiff by fraudulently having plaintiff's gun and badge withdrawn for mental health reasons.

44. ICO Morales never did or arrange a follow up assessment of the plaintiff, which is the standard procedure in cases where a supervisor actually believes that a member of the service has mental health issues.

45. In July 2017, plaintiff applied for Yankee Stadium detail and was denied. The denial of plaintiff's application to be on the Yankee Stadium detail was discriminatory and retaliatory.

46.   In July 2017, plaintiff's promotion to the rank of sergeant was delayed.  The failure to promote plaintiff to the rank of Sergeant in July 2017 was discriminatory and retaliatory.

47.   In July 2017, ICO Morales and a Sergeant arrived at plaintiff's foot post location and requested plaintiff's department assigned cell phone.

48.   Plaintiff informed ICO Morales that plaintiff's department cell phone was not working properly.

49.   Following this visit, after obtaining his supervisors permission, plaintiff went to One Police Plaza while on duty to repair his department assigned cell phone.

50.   While at One Police Plaza, repairing his phone, plaintiff received a call from Sergeant Assia who cursed at the plaintiff and stated "Fuck you, you motherfucker. Who gave you permission?"

51.   Plaintiff told Sergeant Assia that the desk sergeant had given him permission to go to One Police Plaza and repair his phone.

52.   Sergeant Assia screamed at the plaintiff and ordered the plaintiff to return immediately to the 44th Precinct and plaintiff complied.

53.   Upon his return to the 44th Precinct, plaintiff was met by a barrage of profanity by Sergeant Assia, who cursed out the plaintiff, yelled at the plaintiff in anger, and humiliated plaintiff in front of everyone at the Precinct.

54.   Plaintiff was then ordered to stand in the back of the Precinct for the rest of his shift, a period of approximately three hours.

55.   Plaintiff was told by Sergeant Assia that if plaintiff did not sand in the back of the Precinct for three hours, plaintiff would be suspended. Plaintiff complied with this order.

56.   While standing in the back of the Precinct, plaintiff called the front desk to ask what time

he was allowed to take his meal for the tour. The desk Sergeant informed him that he could take his meal after the tour was over. This was a denial of the meal time which every police officer routinely gets on a tour and was intended to punish the plaintiff.

57.     After standing for a considerable period of time, plaintiff began to feel faint due to lack of food, so he left the post and approached the desk. At the desk, plaintiff explained to Sergeants Debinadero and Assia that he was feeling faint due to lack of nourishment.

58.     Sergeants Debinadero and Assia immediately took plaintiff's gun and badge and dragged him by the arm to the locker room where they both pushed the plaintiff up against the wall.

59.     Sergeant Assia placed his forearm against plaintiff's neck, choking the plaintiff.

60.     Sergeant Debinadero kneed plaintiff in the testicles.

61.     Plaintiff lost consciousness as a result of the chokehold from Sergeant Assia.

62.     When plaintiff regained consciousness, he was in an ambulance being transported to a hospital.

63.     After speaking with the emergency medical technicians (EMT) in the Ambulance, it became clear to the plaintiff that the EMT's had been told that plaintiff was suicidal and needed to be taken to the hospital.

64.     Upon information and belief, Sergeants Debinadero and Assia falsely told the EMT's that plaintiff was suicidal in other to cover up their physical maltreatment and un-warranted assault of the plaintiff.

65.     The claim that plaintiff was suicidal was completely false. Plaintiff did not on that day or on any day previous to that, ever express or otherwise indicate that he suffered from suicidal ideations.

66. Immediately before this bizarre incident, plaintiff had spoke to his union (PBA) delegate, asking for a meal, prior to approaching the desk, and not once mentioned anything that could be interpreted as being suicidal.

67. Plaintiff was taken to the emergency room of Columbia Presbyterian Hospital where he was held, against his will, for three days.

68. Plaintiff was then taken to the psychiatric emergency room of the same hospital where he was held, against his will, for an additional six days while being watched for signs of suicidal ideation.

69. Plaintiff explained to the doctors at the psychiatric emergency department that he was never suicidal, and had been sent there fraudulently after being assaulted by two of his supervisors.

70. Plaintiff was then discharged without any explanation.

71. Following plaintiff's discharge from the hospital, plaintiff returned to work at the 44th Precinct.

72. Upon his return to the 44th Precinct, Traffic Safety Sergeant Anderson, who was at the desk, began laughing at the plaintiff.

73. Following the false hospitalization, plaintiff had a conversation with Sergeant Debinadero where plaintiff once again requested that Sergeant Debinadero stop calling him "Willy Bobo". Sergeant Debenadero responded by banning the plaintiff from Debinadero's office. Debinadero stated "Don't come here anymore" and ordered plaintiff to only report Room 124 in the future, because Debinadero did not want to see plaintiff anymore.

74. Plaintiff applied for line of duty injury designation regarding the injury sustained in the

assault by his two supervisors. This request was denied.

75.   In August 2017, plaintiff was told that he would be granted his line of duty request if he agreed to sign a paper stating that he was un-professional and left his post on the date he was assaulted by his supervisors. Plaintiff refused to sign this version of the incident as it was patently false.

76.   In September 2017, plaintiff met with New York City Councilman Ritchie Torres.

77.   During this meeting, plaintiff

78.   Following this meeting, plaintiff received a call from Assistant Integrity Control Officer Sergeant Sanchez who immediately asked where plaintiff had been and indicated that he knew that plaintiff had met with Councilman Torres.

79.   During this conversation, Sergeant Sanchez stated that Plaintiff's meeting with Councilman Ritchie Torres had been discussed by Sergeant Debinadero and Debinadero's supervisors.

80.   In September 2017, plaintiff was punitively transferred to the PSA 6 Bronx, VIPER Unit.

81.   From July 2017 until his transfer out of the 44th Precinct in September 2017, plaintiff was denied overtime.

82.   The denial of overtime to the plaintiff was an act of retaliation for plaintiff's complaint about racial discrimination.

83.   Since July 2017, plaintiff's promotion to the rank of Sergeant has been delayed.

84.   The failure to promote plaintiff to the rank of Sergeant since July 2017 is an act of retaliation for plaintiff's complaint about racial discrimination.

85.   At the PSA 6 Bronx Viper Unit, from September 2017, plaintiff was sexually harassed by Deputy Inspector Victor Salerno.

86.     From October 2017 to December 2017, Salerno would regularly follow plaintiff to the bathroom and would stand in the bathroom looking through the gap in the stall and underneath the door while plaintiff used the bathroom. Salerno's conduct made the plaintiff deeply uncomfortable.

87.     Deputy Inspector Salerno's sexual harassment was not limited to the plaintiff. Salerno also followed other male police officers to the bathroom and watched them in-appropriately.

88.     In December 2017, plaintiff complained to the NYPD's internal anti discriminatory unit, the Office of Equal Employment Opportunity (OEEO) about the discrimination he had experienced in the 44th Precinct prior to his punitive transfer to the PSA 6 Bronx VIPER Unit.

89.     In December 2017, the plaintiff complained to the OEEO about the racially discriminatory hostile work environment at the 44th Precinct.

90.     In December 2017, the plaintiff complained to the OEEO about the sexual harassment from Salerno at PSA 6 Bronx, VIPER Unit.

91.     In January 2018, Salerno again followed the plaintiff to the bathroom and stared at plaintiff's penis while plaintiff used the urinal.

92.     Also in January 2018, Salerno sidled up to the plaintiff and rubbed his genitals on plaintiff's back through his pants.

93.     Following this incident, Salerno taunted the plaintiff, stating "I am a deputy inspector, what are you going to do?"

94.     The week before, Salerno had also brushed his genitals against the back of another police officer, who then got into a heated argument with Deputy Inspector Salerno.

95.   Following the January incidents, plaintiff complained to Lieutenant McCormick and Sergeant Espy about Salerno brushing plaintiff's back with his genitals and following plaintiff into the bathroom and staring at plaintiff's genitals.

96.   Plaintiff's complaints were completely ignored and were never investigated.

97.   The NYPD was well aware of Deputy Inspector Salerno's sexual harassment of multiple police officers or subordinates of other ranks, as a result of multiple previous complaints, but did nothing to investigate or address the situation.

98.   In January 2018, after his sexual harassment complaint was ignored, plaintiff reported Deputy Inspector Salerno to the Internal Affairs Bureau (IAB) of the NYPD.

99.   On or about February 28, 2018, plaintiff was interviewed by the IAB regarding his complaints.

100.   On or about February 28, 2018, plaintiff was transferred from PSA 6 Bronx, VIPER Unit to PSA 7 Bronx, VIPER Unit.

101.   Since December 2017, in retaliation for his complaints of discrimination and sexual harassment, plaintiff has been denied the opportunity to work a second job by the department despite haven taken all the necessary steps required to do so.

102.   White police officers comparable to the plaintiff are routinely approved for second jobs in the same circumstance in which it was denied to the plaintiff.

103.   Since December 2017, while assigned to PSA 6 and PSA 7 VIPER Units, in retaliation for his complaints of discrimination and sexual harassment, plaintiff has been denied overtime.

104.   The facts which give rise to the within causes of action include but are in no way limited to the facts contained above.

## AS AND FOR A FIRST CAUSE OF ACTION

105.    Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

106.    The Defendants discriminated against Plaintiff on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) et seq.

## AS AND FOR A SECOND CAUSE OF ACTION

107.    Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

108.    The Defendants discriminated against Plaintiff on the basis of his race in violation of New York State Executive Law (Human Rights Law) §296.

## AS AND FOR A THIRD CAUSE OF ACTION

109.    Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

110.    The Defendants discriminated against Plaintiff on the basis of his race, in violation of Administrative Code of the City of New York.

## AS AND FOR A FOURTH CAUSE OF ACTION

111.    Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

112.    The Defendants discriminated against Plaintiff on the basis of his race by virtue of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) et seq.

## AS AND FOR A FIFTH CAUSE OF ACTION

113.    Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

114.    The Defendants discriminated against Plaintiff on the basis of his race by virtue of a hostile work environment in violation of New York State Executive Law (Human Rights Law) §296.

## AS AND FOR A SIXTH CAUSE OF ACTION

115. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

116. The Defendants discriminated against Plaintiff on the basis of his race by virtue of a hostile work environment, in violation of Administrative Code of the City of New York.

## AS AND FOR A SEVENTH CAUSE OF ACTION

117. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

118. The Defendants retaliated against Plaintiff because he complained about the discriminatory treatment he was subjected to as a result of his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) et seq.

## AS AND FOR AN EIGHT CAUSE OF ACTION

119. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

120. The Defendants retaliated against Plaintiff because he complained about the discriminatory treatment he was subjected to as a result of his race, in violation of New York State Executive Law.

## AS AND FOR A NINTH CAUSE OF ACTION

121. Plaintiff adopts and incorporates each allegation set forth above in support of this count.

122. In light of the foregoing therefore, the Defendants retaliated against Plaintiff because he complained about the discriminatory treatment he was subjected to as a result of his race, in violation of the Administrative Code of the City of New York.

## AS AND FOR A TENTH CAUSE OF ACTION

123. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

124. The Defendants (Salerno, City of New York) sexually harassed the plaintiff by subjecting the plaintiff to unwelcome, sexually suggestive conduct that was so pervasive as to create

a hostile work environment for the plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) et seq.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

125. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

126. The Defendants (Salerno, City of New York) sexually harassed the plaintiff by subjecting the plaintiff to unwelcome, sexually suggestive conduct that was so pervasive as to create a hostile work environment, in violation of New York State Executive Law (Human Rights Law) §296.

## AS AND FOR A TWELFTH CAUSE OF ACTION

127. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

128. The Defendants (Salerno, City of New York) sexually harassed the plaintiff by subjecting the plaintiff to unwelcome sexually suggestive conduct that was so pervasive as to create a hostile work environment, in violation of Administrative Code of the City of New York.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION- HARASSMENT-AGAINST SALERNO IN HIS INDIVIDUAL CAPACITY – EQUAL PROTECTION UNDER § 1983

129. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

130. Salerno un-lawfully harassed and discriminated against the plaintiff on the basis of his sex and subjected the plaintiff to sex based hostile work environment harassment.

131. Salerno's conduct deprived the plaintiff of his right to equal protection guaranteed by the Fourteenth Amendment to the United States Constitution.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION

132. Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

133.   The Defendants retaliated against Plaintiff because he complained about the sexual harassment he was subjected to as a result of his sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) et seq.

### AS AND FOR AN FIFTEENTH CAUSE OF ACTION

134.   Plaintiff repeats and re-alleges each allegation set forth above in support of this count.

135.   The Defendants retaliated against Plaintiff because he complained about the sexual harassment he was subjected to as a result of his sex, in violation of New York State Executive Law.

### AS AND FOR A SIXTEENTH CAUSE OF ACTION

136.   Plaintiff adopts and incorporates each allegation set forth above in support of this count.

137.   In light of the foregoing therefore, the Defendants retaliated against Plaintiff because he complained about the sexual harassment he was subjected to as a result of his sex, in violation of the Administrative Code of the City of New York.

### PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiff Wilfrido Bonilla demands judgment as follows:

a.  Against the Defendants, declaring the acts and practices complained of herein are in violation of the Title VII of the Civil Rights Act of 1964, Human Rights Law of the City of New York and the Laws of the State of New York; and the Equal Protection Clause of the 14th Amendment.

b.  Enjoining and permanently restraining these violations of the Human Rights Law of the City of New York and the Laws of the State of New York;

c.  Directing Defendants to pay Plaintiff an additional amount as compensatory damages for his pain and suffering;

d.  Directing Defendants to pay Plaintiff an additional amount as punitive damages for their willful and/or reckless disregard for Plaintiff's statutory rights;

e.  Awarding Plaintiff such interest as is allowed by law;

f.  Awarding Plaintiff reasonable attorney's fees and costs;

g.  Trial by Jury; and

h.  Granting such and further relief as this Court deems necessary and proper.

Awarding Plaintiff, Wilfrido Bonilla, such damages as may be proved at trial, including Reinstatement, if applicable, back pay, front pay, compensatory damages, and punitive damages as well as costs and disbursements of this action.

Dated:       New York, New York          Respectfully submitted,
             December 21, 2018

_____/s/_____

Chukwuemeka Nwokoro (CN-1038)
Nwokoro & Scola, Esquires
Attorney for Plaintiff Wilfrido Bonilla
30 Broad Street, Suite 1424
New York, NY 10004
(212) 785-1060
Emekanwokoro101@yahoo.com